UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JAMES DAVIS | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL NO. 3:10cv405 |
| | ) |
| LAKESIDE MOTOR COMPANY, INC., | ) |
| d/b/a HARBOR CHRYSLER JEEP DODGE, | ) |
| | ) |
| Defendant. | ) |

OPINION AND ORDER

This matter is before the court on a motion for summary judgment filed by the defendant, Lakeside Motor Company, Inc., d/b/a Harbor Chrysler Jeep Dodge ("Harbor"), on October 15, 2012. The plaintiff, James Davis ("Davis"), filed a response on November 14, 2012 to which Harbor replied on December 3, 2012.

Also before the court are two motions to strike filed by Harbor on December 3, 2012. Davis responded to these motions on December 20, 2012, and Harbor filed its replies on December 27, 2012.

For the following reasons, the motion for summary judgment, as well as the motions to strike, will be denied.

Summary Judgment

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Not every dispute between the parties precludes summary judgment, however, since "[o]nly

disputes over facts that might affect the outcome of the suit under the governing law" warrant a trial. Id. To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Heft v. Moore, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." Goodman v. Nat'l Sec. Agency, Inc., 621 F.3d 651, 654 (7th Cir. 2010).

## Discussion

Davis is an African-American male and was employed at Harbor from approximately September 5, 2008 through April 7, 2009. Davis was employed as a porter (car washer) in the body shop at Harbor. Davis has brought Title VII claims against Harbor, alleging that he was terminated because of his race (Count I) and that his termination was retaliation for complaining of workplace harassment and discrimination (Count II). Davis has also brought a claim pursuant to 42 U.S.C. Section 1981, alleging racial harassment (hostile work environment) and discrimination (Count III).

Harbor seeks summary judgment on all claims, asserting that Davis was properly terminated for absenteeism and that he was not discriminated or harassed because of his race, and that he was not terminated in retaliation. Davis asserts he was called "nigger" on a regular basis by his supervisor, and was terminated shortly after he complained about the derogatory racial comments.

Approximately one week after his termination, Davis instituted a "Charge of Discrimination" against Harbor with the Gary Human Relations Commission. Thereafter, the

2

matter was referred to the Indiana Civil Rights Commission which found insufficient evidence to substantiate Davis' allegations. Davis then filed the present lawsuit on September 28, 2010.

Before addressing the motion for summary judgment, the court will consider Harbor's two motions to strike. In its first motion to strike, Harbor requests that this court strike Davis' Introduction section of his response in opposition to the summary judgment motion. Harbor argues that the Introduction includes inflammatory statements which are not supported with citations to any record or designated evidence, in contravention of Rule 56(c) of the Federal Rules of Civil Procedure. In response, Davis states that the Introduction is similar to a statement of the case and briefly summarizes Davis' argument. As it is clear that the Introduction is a summary and not meant to be part of the argument sections of the brief, the Introduction will not be stricken.

In its second motion to strike, Harbor seeks to strike Davis' comparator evidence. To establish discrimination under the indirect method, the plaintiff must, among other things, provide evidence that their employer treated them differently than "similarly situated" employees outside of their protected class. *Maclin v. SBC Ameritech*, 520 F.3d 781, 787 (7th Cir. 2008). To meet this burden, they must show that there is someone who is directly comparable to them in all material respects except for membership in the protected class. *Winsley v. Cook Cnty.*, 563 F.3d 598, 605 (7th Cir. 2009). However, as the court has determined that Davis may proceed under the direct method to establish discrimination, Davis need not present comparator evidence. Thus, Harbor's motion to strike will be denied.

The court will now turn to Harbor's motion for summary judgment with respect to Counts I and II, which are claims of discriminatory termination and retaliatory termination,

3

respectively. Harbor first asserts that Davis has presented no evidence of direct discrimination. The long-standing case law provides that a plaintiff may prove discrimination either directly or indirectly. *Coleman v. Donahoe*, 667, F.3d 835, 845 (7th Cir. 2012). Under the direct method, Davis may avoid summary judgment by presenting sufficient evidence, either direct or circumstantial, that the employer's alleged discriminatory conduct motivated an adverse employment action.[1]

Davis argues that he has sufficient circumstantial evidence to proceed under the direct method. Davis points to his own deposition testimony where he describes being called "nigger" and "nigga" on an almost daily basis by his supervisor, Mike Nichols ("Nichols"). (Davis Dep. at 57-58). Davis explained that he asked Nichols to not use that word and to please call him James. (Davis Dep. at 60). Yet, Nichols persisted in calling him "nigger" and told him that Davis could keep his job as long as Nichols could call him "nigger". (Davis Dep. at 84). Davis has submitted evidence explaining how he informed Nichols' supervisor, Andrew Panozzo ("Panozzo"), that Nichols was using the word "nigger" in the body shop. (Panozzo Dep. at 5.) Panozzo testified that he reported it to his supervisor, Brian Michaels ("Michaels"), and Michaels referred him to Dave Lawson ("Lawson"). Panozzo then reported Davis' complaint to Lawson. Panozzo

---

[1] The direct evidence tests for discriminatory termination and discriminatory retaliation are substantially the same. The Seventh Circuit, in *Stephens v. Erickson*, 569 F.3d 779, 786-87 (7th Cir. 2009), has described the test for direct evidence of discriminatory retaliation as follows:

> A plaintiff may establish unlawful retaliation using either the direct or indirect method of proof. Under the direct method, [the plaintiff] must demonstrate that (1) he engaged in a statutorily protected activity; (2) he suffered a materially adverse action by his employer; and (3) a causal connection exists between the two.

Thus, the court will consider two claims together.

4

testified that Michaels "kind of just shrugged his shoulders and kind of laughed at me" when he reported that Nichols was allegedly using the word "nigger" in the body shop. (Panozzo Dep. at 6.) Panozzo stated that he never heard any racial comments being made in the body shop as it was not his department and he wasn't normally in that area. However, Panozzo also stated that other employees would tell him "Hey, Andy you need to get back there and listen." (Panozzo Dep. at 15). This testimony at least suggests that Davis' complaints were well-founded. Further, Panozzo testified that no one else reported that Nichols used the term "nigger" in the body shop, but he also stated that "James is the only one that would come out and report it. I knew there were other ones there... James was the only one to come forward." (Panozzo Dep. at 23-24). Again, this testimony supports Davis' claim that he was subjected to derogatory language at work.

Davis cites to Rickey Flitter's ("Flitter") deposition at pages 41-44 in support of his assertion that Nichols used the word "nigger", in general. The relevant deposition testimony is at follows:

> Q. Have you ever heard Mike Nichols use racially derogatory terms toward African-Americans at anytime, anywhere, anyplace?
>
> A. Yes, I have heard him say some off candid things, yes.
>
> Q. Tell me about those times.
>
> \* \* \*
>
> A. I've heard him say the – would be the N-I-G-G-E-R word a couple of times.
>
> Q. Can you tell me the context or where were you?
>
> A. Auction one time.

5

> Q. Did he use it towards a person?
>
> A. No.
>
> * * *
>
> Q. Do you remember the other times that you heard Mr. Nichols use the N word?
>
> A. I don't recall them now.
>
> Q. On how many occasions did you hear him use it?
>
> A. A few.
>
> Q. So in other words, if you heard an allegation that Mr. Nichols used the N word, that wouldn't be shocking to you because you've heard him use it in the past?
>
> * * *
>
> MS. DAVIS: In general or in a work context?
>
> Q. In general.
>
> A. In general, it probably wouldn't. . . .

(Flitter Dep. at 41-43)

Shortly after making his complaints to supervisors at Harbor, Davis was terminated. Davis estimates that he first complained "around February" of 2009. Davis was terminated on April 7, 2009. Harbor insists that Davis was terminated for violating the attendance policy, and not for any racial reasons. Harbor contends that on January 24, 2009, Davis left work early without permission. Harbor has submitted an Exhibit which is an Employee Warning Form which states that Davis "left early" and that further incidents could result in "probation, possible suspension". Davis denies that the incident ever happened and testified that he never saw the form before it was shown to him at his deposition. (Davis Dep. at 66-67). The form was not

signed by Davis. Davis testified that the only time he left work early was when he had permission to leave and take his son to the doctor. (Davis Dep. at 67). Harbor also contends that on March 30th, 2009, Davis left early for lunch and never came back, and didn't call. Davis disputes this, and states that if he wasn't going to go back to work, he would have called. (Davis Dep. at 69). Harbor has submitted an Exhibit which is another Employee Warning Form which states that Davis was "late for lunch & never came back" and that further incidents could result in suspension or dismissal. This form is purportedly signed (printed name) by Davis. Davis acknowledges that the signature on the form looks like his signature but testified that he does not remember ever signing the form or having a meeting with Nichols about the incident. (Davis Dep. at 70). Davis further states that he was not even aware of any disciplinary warning system being used at Harbor. (*Id.*) Next, Harbor claims that on April 6th, 2009, Davis did not come to work and didn't call. Davis disputes this, and states that he had asked Nichols if he could have that day off, and Nichols told him that was fine. (Davis Dep. at 71). Harbor has submitted an Exhibit which is another Employee Warning Form, which indicates that Davis was a no call/no show on April 6th and was terminated. This exhibit indicates that Davis refused to sign it. Davis testified that Harbor never showed the form to him and did not ask him to sign the form. (Davis Dep. at 74).

  This court finds that, viewing the facts most favorably to Davis as required when considering a summary judgment motion, Davis has presented direct evidence of racial discrimination. An important fact in this case is the use of the word "nigger", which in itself can constitute direct evidence of racial animus. The Seventh Circuit has ruled on this specific issue in *McCarthy v. Kempfer Life Ins. Cos.*, 924 F.2d 683, 687 (7th Cir. 1991), where it was held that

7

racial epithets or discriminatory conduct directed at the plaintiff by an individual closely involved in the challenged decisional process are direct evidence of discriminatory animus. *See also Knox v. First Nat. Bank of Chicago*, 909 F. Supp. 569, 572 (N.D. Ill. 1995) ("plaintiff may present direct proof of discriminatory intent by introducing stray, stereotyped racial remarks if the remarks are made by a decisionmaker, are causally related to or have a nexus with the employment decision at issue, and are proximately related in time to the employment decision") (internal citations omitted).

Likewise, the Fifth Circuit has held in *Jones v. Robinson Property Group*, 04-60688 (5th Cir. 2005):

> "When a person or persons with decision making authority evinces racial animus that may constitute direct evidence of discrimination. *See Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 290 (5th Cir. 2004) (citations omitted); *see also Young v. City of Houston, Tex.*, 906 F.2d 177, 180-81 (5th Cir. 1990) (citing *Kendall v. Block*, 821 F.2d 1142, 1145-46 (5th Cir. 1987) ("This court has implied that calling an employee a 'nigger' would be direct evidence of race discrimination."). We have also previously observed that racial epithets undoubtably demonstrate racial animus. *Causey*, 394 F.3d at 289 n.2.

Harbor contends that Davis' deposition testimony should not be considered because it is "self-serving". However, all evidence is self-serving, and this fact does not make the evidence inadmissible. As explained in *Whitlock v. Brown*, 596 F.3d 406, 411 (7th Cir. 2010):

> "Self-serving" deposition testimony may satisfy a party's evidentiary burden on summary judgment. *See Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir.2003). *Payne* explained that the sufficiency of a "self-serving" statement depends on whether the statement is based on personal knowledge and whether it is grounded in observation as opposed to mere speculation.

Harbor has not even contended that Davis' deposition testimony is not based on personal knowledge or grounded in observation. The court has read Davis' deposition and Davis simply recites, in a straightforward way, his version of what happened. This is not a case where the

8

plaintiff is speculating as to an employer's state of mind. Rather, Davis simply tells his story. The court notes that Davis is a credible witness in his deposition and if he is also credible in person on the witness stand, a jury could find in his favor. Of course, Davis' credibility is ultimately a question of fact for the jury, not this court, to decide. As Davis has presented direct evidence of racial discrimination, Harbor's motion to dismiss is denied with respect to Davis' racial discrimination claim.

Harbor next contends that Davis has failed to provide evidence sufficient to support a cause of action under Title VII or Section 1981 as to his allegations of a hostile work environment. To prevail against a summary judgment motion on a hostile work environment claim under either Title VII or Section 1981, the plaintiff must provide sufficient evidence to create a material issue of fact with respect to four elements: (1) the work environment must have been both subjectively and objectively offensive; (2) his race must have been the cause of the harassment; (3) the conduct must have been severe or pervasive; and (4) there must have been a basis for employer liability. *Montgomery v. Am. Airlines, Inc.* 626 F.3d 382, 390 (7th Cir. 2010).

With respect to the first prong of the *Montgomery* test, Davis contends that he was exposed to offensive comments and, therefore, a reasonable jury could conclude that he was exposed to an objectively hostile work environment. As noted above, Davis claims that his supervisor, Nichols, referred to him as "nigger" on a regular basis. In support of this claim, Davis asserts that Nichols was known to use the word "nigger", and refers to the deposition of Flitter (set forth above in the discussion of the discrimination claims) to support his position. Davis claims that this alleged exposure to offensive comments supports a reasonable inference of an objectively hostile work environment. This court agrees with Davis that the use of the word

"nigger" is evidence of an objectively hostile work environment. As the Seventh Circuit noted in *Hrobowski v. Worthington Steel Co.*, 358 F.3d 473, 477 (7th Cir. 2004):

> Given American history, we recognize that the word "nigger" can have a highly disturbing impact on the listener. Cf. *Virginia v. Black*, 538 U.S. 343, 123 S.Ct. 1536, 1545, 155 L.Ed.2d 535 (2003) (noting that the Ku Klux Klan vowed to "keep niggers out of your town" as part of its campaign of racial violence and intimidation). Thus, a plaintiff's repeated subjection to hearing that word could lead a reasonable factfinder to conclude that a working environment was objectively hostile. *See, e.g., Rodgers v. Western-Southern Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir.1993); *see also Bailey v. Binyon*, 583 F.Supp. 923, 927 (N.D.Ill.1984) (stating that "use of the word `nigger' automatically separates the person addressed from every non-black person").

Harbor also argues that even if Davis could establish that his work environment was objectively hostile, Davis' claim would still fail because he has not presented evidence showing that the offensive utterances were sufficiently advanced to warrant a subjective interpretation of hostile work environment. Again, the Seventh Circuit's decision in *Hrobowski* is instructive:

> As to the subjective component of our inquiry, all that Hrobowski has to establish is that he perceived the environment to be hostile or abusive, *Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 695 (7th Cir.2001). As discussed above, a reasonable jury could find that the words that Hrobowski heard were unwelcome, and therefore there is an issue of material fact regarding subjective hostility.

Thus, Davis has met both prongs of the first element of a hostile environment claim. The second element, that the harassment occurred because of his race, is clear. Davis is African-American and he was referred to as "nigger". This is sufficient.

Next, Davis must present evidence that the alleged conduct was either severe or pervasive. In *Rodgers v. Western-Southern Life Insurance Co.*, 358 F.3d 473 (7th Cir. 2004), the Seventh Circuit found that even one utterance of a racial epithet was sufficient to give rise to a claim of hostile work environment racial harassment. The plaintiff, an African-American insurance sales manager, claimed that his white supervisor called him a "nigger" twice and said

that "[y]ou black guys are too fucking dumb to be insurance agents." The Seventh Circuit held that this conduct was sufficient to establish a claim of hostile work environment. As the court noted: "Perhaps no single act can more quickly 'alter the conditions of employment and create an abusive working environment' than the use of an unambiguous racial epithet such as 'nigger' by a supervisor in the presence of his subordinate." Since even one utterance of a racial epithet is sufficiently severe, Davis has more than met the third element of a hostile environment claim.

The fourth element, a basis for employer liability, is undisputed. Accordingly, as Davis has presented sufficient evidence to support his hostile environment claim, summary judgment will be denied as to this claim.

## Conclusion

On the basis of the foregoing, the defendant's motion for summary judgment [DE 58] is hereby DENIED. Further, defendant's motions to strike [DE 73, 74] are also hereby DENIED.

Entered: January 11, 2013.

s/ William C. Lee  
William C. Lee, Judge  
United States District Court