UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| JAMES DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:10-CV-405 JD |
| | ) | |
| LAKESIDE MOTOR COMPANY INC., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This is an employment discrimination case brought by James Davis against his former

employer, Lakeside Motor Company, Inc. This case was set for a jury trial on March 17, 2014,

but that that date was vacated on February 4, 2014 due to numerous failures by both parties to

comply with this Court's Scheduling, Pretrial Conference, and Trial Order. [DE 131]. In this

Order, the Court will address two motions for sanctions filed by the Plaintiff [DE 132, 133], as

well as several other issues presented by the parties' pre-trial filings, in order to clarify the issues

to be tried and the parties' obligations in proceeding to trial.

**A.**      **Plaintiff's Motion for Sanctions Regarding Documents Produced through Quashed Subpoenas**

On January 30, 2014, Davis filed a Motion for Sanctions for the Defendant's Violation of

Court Orders Dated May 22, 2012 and October 24, 2012.[1] [DE 112]. In the first of those orders,

the Court granted Davis' motion to quash seven subpoenas that Lakeside had served on his

current and former employers. [DE 40]. The second of those orders addressed a subsequent

attempt by the Lakeside to subpoena Davis' employers, and denied Davis' motion to quash as

---

[1] This filing was later stricken at Plaintiff's request because he had inadvertently failed to redact
his personally identifiable information from the attached exhibits. [DE 130]. Plaintiff refiled the
motion on February 4, 2014. [DE 132].

moot based on Lakeside's representation that it had withdrawn the subpoenas. [DE 62].

However, even though all of Lakeside's subpoenas had been quashed or withdrawn, the trial

exhibits that Lakeside disclosed on January 16, 2014 included two exhibits containing

documents from Davis' employers, apparently produced to Lakeside in response to its

subpoenas. Davis accordingly filed this motion for sanctions, asserting that Defendant violated

this Court's orders and also failed to supplement its disclosures by producing those documents to

Davis as required by Rule 26(e). Davis seeks to prohibit the Defendant from using those

documents at trial, asks this Court to hold Defendant in contempt for violation of its orders, and

requests an award of attorneys' fees incurred in addressing this issue, pursuant to Rules 37(b)

and 37(c).[2] [DE 112 p. 6; DE 132].

By way of background, Defendant first notified Davis of its intent to subpoena records

from his current and former employers on April 1, 2011. [DE 33-3]. Defendant attached copies

of seven subpoenas, which sought Davis' entire personnel file from Frost Creative Sounds,

Alpha Baking Company, Lowe's Home Improvement, Rally's Hamburgers, Complete Cleaning

Service, Damon's Grill, and Dixie Staffing Services. [DE 33-3]. Davis objected to Lakeside

serving these subpoenas, and the parties discussed the matter through a series of correspondence

over the following months. On August 16, 2011, the Defendant reiterated its intent to serve the

subpoenas, and attached seven subpoenas directed to the same set of employers. [DE 33-13].

Davis again objected, and the parties largely rehashed their prior discussions in further

correspondence dated August 19, 26, and 29, 2011. [DE 33-15, -16, -17]. The parties further

---

[2] As noted, Davis failed to redact his personally identifiable information from the initial motion, so he requested leave to re-file the motion for the sole purpose of redacting the exhibits. [DE 129]. The Court granted that request. [DE 130]. However, when Davis re-filed his motion, he amended the substance of his brief to include a request for a default judgment as well, despite having neither sought nor received leave to do so. [DE 132]. The Court therefore disregards this request as improperly raised.

discussed the issue during a telephone conference on September 14, 2011. [DE 34]. Defendant had not yet served the subpoenas at this time.

On April 4, 2012, over six months later, Defendant served subpoenas on a number of Davis' employers. [DE 112-1]. Lakeside notified Davis that same day that it was serving the subpoenas. [DE 112-1]. Attached to that letter were subpoenas to seven employers: Dixie Staffing Services, Complete Cleaning Service, Checkers Drive-In Restaurants, Inc., Lowe's Companies, Inc., Manpower Group, Frost Creative Sounds, and Alpha Baking Company. [DE 112-1]. Notably, Lakeside did not attach any subpoena to Damon's Grill or otherwise notify Davis that it had subpoenaed them, though it did in fact serve the subpoena.[3] [*See id.*]. Though the subpoenas did not require a response for 30 days, Damon's Grill responded to the subpoena on April 9, 2012, and Alpha Baking Company responded on April 18, 2012. [DE 112-3; DE 136-2].

On April 24, 2012, unaware that two of the subpoenas had already been responded to, Plaintiff moved to quash all of the subpoenas, arguing that they were overly broad and unduly burdensome. [DE 31]. The Defendant responded in opposition to the motion to quash, but did not disclose to either the Plaintiff or the Court that it had already received responses as to two of the subpoenas, even though this rendered the motion to quash moot as to those subpoenas. *In re Special April 1977 Grand Jury*, 581 F.2d 589, 591 (7th Cir. 1978) ("Of course it is an empty gesture to 'quash' a subpoena already honored . . . ."). Nor did Lakeside disclose that it had in fact served at least eight subpoenas, not just the seven of which it had notified Davis. On May 22, 2012, the Court granted Plaintiff's motion to quash, finding that the subpoenas were overly broad and unduly burdensome. [DE 40].

---

[3] Lakeside does not appear to have previously notified Davis of its intent to subpoena Manpower Group, either.

On September 13, 2012, the day before the close of discovery, Lakeside again notified Davis that it was issuing subpoenas to his employers, this time seeking wage information from eight of his past and present employers. [DE 112-2]. These employers included Alpha Baking Company and Damon's Grill, even though Lakeside had already received responses from those employers through its first round of subpoenas. [DE 112-2]. Davis immediately moved to quash the subpoenas. [DE 51]. Lakeside did not respond to the motion to quash, but represented in a separate filing that it had withdrawn the subpoenas. [DE 51]. The Court accordingly denied Davis' motion to quash as moot, but awarded Davis his attorneys' fees incurred in litigating the motion based on its finding that Lakeside's "eleventh hour subpoenas . . . substantially duplicated those already quashed by this Court in its May 22nd order [and] once again caused Plaintiff undue cost by forcing him to file [the motion to quash]." [DE 62 p. 7]. At no point did Lakeside disclose that it was in possession of documents from both Damon's Grill and Alpha Baking Company.

On January 16, 2014, Lakeside provided Davis with copies of the exhibits it intended to use at trial. Those exhibits included documents received from Damon's Grill (Exhibit D) and Alpha Baking Company (Exhibit E), as well as a summary exhibit containing information learned through those documents (Exhibit F). Davis therefore brought the present motion, asserting that Lakeside violated the Court's prior orders quashing the subpoenas and also violated its discovery obligations by failing to previously disclose the documents. Davis seeks to prevent Lakeside from using the documents or the information learned through those documents at trial, and has also sought a finding of contempt against Lakeside and recovery of his attorneys' fees. [DE 112, 132]. In response, Lakeside has agreed to withdraw Exhibits D and E, but denies that any other sanctions are warranted. [DE 135].

Davis first argues that the Court should sanction Lakeside pursuant to Rule 37(b), which authorizes sanctions for violations of a court's discovery orders, and hold it in contempt. Fed. R. Civ. P. 37(b)(2)(A). However, the Court cannot conclude that Lakeside violated its orders relative to the subpoenas. Lakeside received responses to both of the subpoenas at issue before Davis had even moved to quash them, much less before the Court had granted the motion, so its issuance of the subpoenas and its receipt of responsive documents cannot have violated the Court's later orders quashing those subpoenas. [DE 136-1]. Davis argues that Lakeside violated the Court's orders by failing to destroy the documents once the subpoenas were quashed, but it provided no authority for that assertion.[4] Rule 45(e)(2)(B) states that a party may be obligated to return or destroy documents if the party responding to a subpoena inadvertently produced privileged material, but nothing in Rule 45 addresses a party's obligations with respect to documents produced pursuant to a subpoena that is later quashed. None of the Court's orders have addressed that question, either. Therefore, neither sanctions nor a finding of contempt are justified on this basis. *See Tranzact Techs. v. 1Source Worldsite*, 406 F.3d 851, 855 (7th Cir. 2005) (stating that for a party to be held in contempt, it "must have violated an order that sets forth in specific detail an unequivocal command from the court").

Lakeside's compliance with its discovery obligations is another story, and justifies sanctions pursuant to Rule 37(c) for failure to supplement discovery responses as required by Rule 26(e). Fed. R. Civ. P. 37(c)(1). Rule 26(e) requires a party to supplement or correct a disclosure or response to a document request "in a timely manner if the party learns that in some

---

[4] Oddly, Lakeside essentially concedes that it should have destroyed the documents, though it denies that its failure to do so is sanctionable. Despite the parties' apparent agreement, the Court is skeptical that destroying documents in a party's possession that are responsive to discovery requests would have been the proper course of action, as that could raise much more serious concerns relative to spoliation. Lakeside certainly should have disclosed its possession of the documents, however, as discussed *infra*.

material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A). Here, however, Lakeside was in possession of these documents for nearly two years before finally disclosing them to Davis. Davis' first set of requests for the production of documents specifically requested copies of all documents obtained through the use of a subpoena. [DE 112-6]. In responding to that request on June 13, 2011, Lakeside simply raised various boilerplate objections. [*Id.*]. In correspondence with Davis shortly thereafter, however, Lakeside affirmatively represented that it had neither "subpoenaed nor actually procured" documents from Davis' employers. [DE 33-11]. While this may have been true at the time, it was no longer true as of April 2012, when Lakeside did in fact procure such documents from two of Davis' employers. [DE 136-1]. Lakeside did not disclose these documents to Davis until January 16, 2014, however.

Lakeside therefore violated Rule 26(e) both by failing to supplement its response to Davis' document request upon receiving the subpoenaed documents, and by failing to correct its affirmative statement that it was not in possession of any documents from Davis' employers. First, Rule 34 states that in responding to a document request, a party must specify the parts of the request that it objects to and must "permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C). Though Lakeside's objection to Davis' document request may have been justified with respect to some aspects of the request, the subpoenaed documents fall squarely within its scope, so Lakeside was required to produce the documents "in a timely manner" after receiving them, notwithstanding its boilerplate objections. It failed to do so, and thus violated Rule 26(e). Second, Lakeside failed to correct its affirmative statement that it had not procured any documents from Davis' employers after it did, in fact, receive such documents. Had Lakeside disclosed this fact, Davis could have moved to compel production of the documents while

discovery was still open, allowing him to follow up or conduct further discovery if necessary. However, since all of Lakeside's subpoenas were either quashed and withdrawn and it never acknowledged its receipt of responsive documents, Davis had no reason to do so.

These violations of Rule 26(e) authorize the Court to impose sanctions pursuant to Rule 37(c), which states that where a party fails to comply with Rule 26(e), "the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). This sanction is "automatic and mandatory unless the offending party can establish that its violation of Rule 26[(e)] was either justified or harmless." *Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 641 (7th Cir. 2008) (internal quotations omitted). Rule 37(c) further authorizes a court to "order payment of the reasonable expenses, including attorney's fees, caused by the failure." Fed. R. Civ. P. 37(c)(1)(A).

Given that Lakeside has voluntarily withdrawn Exhibits D and E, the sanctions that remain at issue are whether Exhibit F should be excluded and whether Davis should be awarded his attorneys' fees for bringing this motion. The Court concludes that the information in Exhibit F that Lakeside learned through the subpoenas (though not Exhibit F in its entirety) must be stricken, and that attorneys' fees are warranted. There is no basis whatsoever on which to conclude that Lakeside's violations were justified; its excuse that it put the documents in its file and forgot about them is simply unacceptable. As Defendant's counsel have been expressly warned in another case, "Poor judgment and a degree of indolence, as well as a lack of candor in failing to report information all fall within the realm of conduct that is not substantially justified or harmless during discovery." *McAtee v. Buca Rests., Inc.*, No. 1:10-cv-1090-SEB-DKL, 2011

WL 6016648, at *3 (S.D. Ind. Dec. 2, 2011) (quoting *Langley v. Union Elec. Co.*, 107 F.3d 510, 514 (7th Cir. 1997)) (internal alterations and quotations omitted).

Lakeside's conduct is not harmless, either. Lakeside sought to rely on the documents at issue in part to establish or refute certain facts relative to Davis' wages and employment history. By waiting until discovery had closed to disclose the documents, Lakeside deprived Davis of the opportunity to further investigate or seek additional discovery from those employers relative to those facts. The Court further notes that this is now the third instance in which Davis has had to incur undue costs by litigating matters related to subpoenas that were quashed in the first instance. Magistrate Judge Nuechterlein expressed little hesitation in assessing attorneys' fees against Lakeside after Davis had to bring the second such motion, and the Court believes that the sanction of attorneys' fees is equally warranted here on the third such motion.

Accordingly, Davis' motion for sanctions [DE 132] is GRANTED in part and DENIED in part. Lakeside's Exhibits D and E are stricken, as is any information in Exhibit F learned through those documents. The Court further awards Davis his reasonable attorneys' fees incurred in bringing this motion. Davis shall file a bill of costs with this Court indicating those fees and costs fees within 30 days of today's date. Lakeside may file any objection to that bill of costs with 14 days of its filing. The Court denies Davis' request to hold Lakeside in contempt or impose any greater sanction.

**B.     Plaintiff's Motion for Sanctions for Failure to Produce Documents**

Davis has also filed a separate motion for sanctions against Lakeside based on its failure to produce certain other documents in discovery. [DE 133]. Davis asserts that Lakeside failed to produce the following documents that it later included among its trial exhibits: (1) policies entitled *Equal Employment Opportunity is the Law* and *You Have a Right to a Safe and Healthful Workplace*; (2) a 2006 performance evaluation of Mike Nichols, Davis' supervisor; and

(3) communications between Lakeside and the EEOC. Davis requests that the Court exclude these documents from trial, advise the jury as to Lakeside's conduct, and award him his attorneys' fees and costs for addressing this issue.[5] [DE 113]. In response, Lakeside has agreed to withdraw the performance evaluation and the policies as exhibits, but it still intends to elicit testimony relative to those documents, and denies that any other sanctions are warranted.

Davis' first set of requests for the production of documents sought all "policy manuals, policy statements, employee handbooks, or any other documents that were in effect during Plaintiff's employment . . . that evidence, refer to, or relate to [Lakeside's] Title VII policy(ies)." [DE 133-1]. Davis also requested Nichols' personnel file (specifically including all performance reviews), and all documents produced to or received from the EEOC. [*Id.*]. Lakeside responded to this discovery on June 13, 2011. [*Id.*]. As to the request for Lakeside's policies, Lakeside indicated that it was producing responsive documents, subject to a variety of objections. [*Id.*]. As to the latter two requests, Lakeside's response stated, "These documents were provided to the EEOC in the course of its investigation. The plaintiff has indicated that he already requested said information from the EEOC and is in possession of the same." [*Id.*]. Lakeside had already received a copy of the EEOC's investigation file at the time of this response, but Davis' request to the EEOC had been delayed and he did not actually receive the file until several months later, in April 2012. Upon receiving the file from the EEOC, Davis supplemented his discovery responses by sending a copy of the file to Lakeside. Lakeside did not disclose its version to Davis during discovery, though.

---

[5] As with the other motion for sanctions, Davis had not redacted his personally identifiable information from the exhibits. [DE 113]. Davis requested leave to refile the motion with redacted exhibits, and the Court granted his request. [DE 129, 130]. In refiling his motion for sanctions, though, Davis similarly amended the substance of the motion to include a request for default judgment against Lakeside as well. [DE 133]. Because he had not sought leave to do so, the Court disregards this request.

When Lakeside disclosed its trial exhibits on January 16, 2014, those exhibits contained several documents responsive to these requests that had never been produced. Lakeside's Exhibit K contained documents entitled *Equal Employment Opportunity is the Law*, a one-page document that instructs employees on their rights under various anti-discrimination laws, and *You Have a Right to a Safe and Healthful Workplace*, which appears to be an OSHA flyer notifying employees of their workplace-safety rights. [DE 127-27]. Lakeside asserts that these were both posted around the dealership. Lakeside does not appear to dispute that it failed to disclose these documents, but argues that sanctions are not warranted under Rule 37(c) because its failure was harmless. The Court disagrees, and views this as a serious violation of Lakeside's discovery obligations that amply justifies the imposition of sanctions.

The nature of Lakeside's anti-discrimination policies is directly relevant to this action, both with regard to its potential liability for Davis' hostile work environment claim, and to whether Davis can recover punitive damages. By failing to disclose these documents to Davis during the course of discovery, Lakeside deprived him of the opportunity to conduct further investigation and discovery as to whether and where these posters were displayed during his employment, for example. Lakeside argues that because another document it did produce to Davis refers to posters at various places in the dealership regarding employees' federal rights, Davis should have requested to inspect the premises of the dealership instead of submitting a document request. However, Lakeside may not dictate the means by which Davis pursues discovery, and its failure to properly respond to a discovery request is not justified or rendered harmless simply because there are other avenues by which Davis could have sought the discovery. Lakeside similarly argues that its failure is harmless because the documents are publicly available on government websites. This argument again misses the point, however,

since the ease with which Davis might have located the documents had he known of their existence is immaterial if Lakeside never identified them or disclosed that they existed.

Lakeside further asserts that "defense witnesses will simply testify as to the substance of the [posters] and that the same are and were properly and prominently displayed," and that any harm from its failure to disclose the documents "can be cured through cross and direct examination of the parties." [DE 134 p. 7]. This is unacceptable as well. Lakeside cannot flaunt its discovery obligations and then evade the resulting sanctions by simply eliciting testimony as to the excluded material. In addition, the ability to cross examine witnesses at trial does not negate the prejudice where Davis should have had the opportunity to examine the witnesses on these documents during their depositions. Finally, Lakeside suggests that any prejudice could be cured by permitting witnesses to be re-deposed relative to documents it failed to disclose previously. However, given that Lakeside terminated Davis' employment nearly five years ago by now, the Court does not view further delays as an appropriate remedy for Lakeside's conduct.

Accordingly, the Court concludes that Lakeside's violation of Rule 37(c) was neither justified nor harmless, and imposes sanctions as follows: the two documents at issue, *Equal Employment Opportunity is the Law* and *You Have a Right to a Safe and Healthful Workplace* (pages 2 and 3 to Lakeside's Trial Exhibit K), will be excluded from evidence at trial. Further, Lakeside will be prohibited from eliciting testimony as to the existence or content of these documents. Should any witness so testify, then upon a motion to strike, the Court will instruct the jury that the evidence is being excluded due to Lakeside's failure to produce the documents in discovery. Finally, the Court awards Davis his reasonable attorneys' fees and costs in bringing this motion.

The remaining documents at issue are Nichols' performance review and Lakeside's communications with the EEOC. These are both documents that Lakeside claims to have provided to the EEOC, and that it did not provide to Davis directly based on its belief that those documents would be contained in the file Davis requested from the EEOC. As to the communications between Lakeside and the EEOC, Davis admits that he ultimately received the EEOC file, even though the fact that Lakeside declined to provide those documents to him directly resulted in a delay of several months.[6] [DE 138]. In his reply brief, Davis notes that he does not object to Lakeside's use of those documents, assuming they are otherwise admissible, but appears to maintain his objection as to any documents sent to or from the EEOC that were not contained in his version of the file. Though the Court notes that the two versions of the file are not identical, Davis has not specified which, if any, of the documents in Lakeside's version of the file were not contained in his version of file and should thus be excluded, so the Court declines to impose sanctions relative to these documents. Also, to the extent Davis seeks exclusion at trial of documents not contained in his version of the file he will need to specifically identify those documents.

As to Nichols' performance review, however, there is no evidence in the record to support Lakeside's assertion that it ever provided it to the EEOC. In its response to Davis' document requests, Lakeside refused to produce this document to Davis on the basis that he had requested the EEOC file and would presumably receive the performance review as part of that file. [DE 133-1]. However, Lakeside had itself procured the file from the EEOC by that time, and even its own copy of the file does not contain this document. [DE 127-7]. Lakeside thus should

---

[6] Lakeside's explanation that it "was simply trying to avoid multiple copies of the same documents in each counsel's respective files" is difficult to take at face value, particularly in light of its pattern of conduct in this matter. [DE 134 pp. 9–10].

have known that its disclosure was incomplete at the time it made it. Further, when Davis finally received the EEOC file several months later, he forwarded a copy of the file to Lakeside. Lakeside therefore knew at that time precisely which documents Davis received from the EEOC, and should have supplemented its discovery responses to disclose any responsive documents that were missing from the file.

While Davis has not shown that the performance evaluation is likely to be particularly consequential in this matter, Davis was entitled to have access to it during discovery and while deposing Nichols, and Lakeside's failure to produce the document as required deprived him of that right. Accordingly, for the same reasons discussed above, the Court concludes that sanctions are justified pursuant to Rule 37(c) due to Lakeside's failure to disclose the document and supplement its response. Nichols' 2006 performance evaluation (Lakeside's Trial Exhibit G) is therefore excluded from evidence at trial, Lakeside is prohibited from eliciting any testimony relative to that document, and the Court awards Davis his attorneys' fees in bringing this motion.

As alarming as Lakeside's failure to produce this document, though, is the fact that Lakeside repeatedly and affirmatively represented, both to Davis and to this Court, that Davis should have received Nichols' performance evaluation since Lakeside had sent it to the EEOC, even though all of the evidence in the record indicates that it did not do so. Neither Lakeside's nor Davis' copies of the EEOC file contain the evaluation, and neither file indicates that the EEOC investigator ever requested or that Lakeside ever produced the document. [DE 127-7, 138-1]. Nevertheless, Lakeside asks this Court to deny Davis' motion for sanctions on the basis that "the employment evaluation was produced to the EEOC by the defendant during the EEOC's investigation." [DE 134 p. 4; *see also* DE 134 p. 3 (stating that relative to Davis' request for Nichols' personnel records, "the defendant responded that the same had been provided to the

EEOC in the course of its investigation"); DE 134 p. 9 (stating that Lakeside "believed and continues to believe that opposing counsel had the EEOC file and Evaluation Form, *which was contained within the EEOC file*" (emphasis added))]. The Court cannot discern any basis for these assertions in the record.

Accordingly, the Court ORDERS Lakeside's counsel of record to SHOW CAUSE why they should not be sanctioned pursuant to Rule 11(c) and Rule 26(g)(3) for falsely certifying that their factual contentions have evidentiary support, in violation of Rule 11(b)(3), and that their discovery responses were "complete and correct" at the time they were made, in violation of Rule 26(g)(1)(A). Counsel shall respond in writing within 14 days of today's date by providing evidentiary support for the truth of their assertions, or, if they were false, by detailing the nature and extent of the inquiries upon which they based their assertions.

## C.    Substantive Issues Relative to Trial

Having resolved these matters that have been formally submitted to the Court, the Court now turns to several substantive matters that were raised in the parties' pretrial filings, in an effort to clarify and streamline the issues that the parties and the Court will need to address going forward.

### 1.    Issues to be Submitted to the Jury

One point of contention that has come to light through the parties' submissions is the scope of the issues that will be submitted to the jury. Lakeside does not agree to submit the issues of Davis' back pay or front pay, if any, to the jury, and Davis does not argue that he is entitled to have the jury decide such questions as of right. [DE 123 p. 40; DE 128 p. 41]. Davis instead requests that the Court submit his back pay and front pay to the jury for an advisory verdict pursuant to Rule 39(c)(1) (providing that in "an action not triable of right by a jury, the court . . . may try any issue with an advisory jury"). The Court declines to do so.

"The use of an advisory jury under Rule 39(c) lies within the discretion of the trial court and is not a matter of right." *United States v. Ellis Research Labs., Inc.*, 300 F.2d 550, 554 (7th Cir. 1962). A court's decision as to whether to utilize an advisory jury is typically guided by "notions of efficiency or convenience." 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2335 (3d ed. Apr. 2013). Here, the Court believes that much more efficiency and convenience would be lost than gained by submitting the questions of back pay and front pay to the jury. *See Schuster v. Shepard Chevrolet, Inc.*, No. 99 C 8326, 2002 WL 507130, at *10–11 (N.D. Ill. Apr. 3, 2002) (finding that "the benefit to be derived from an advisory verdict [on front pay] would not outweigh the[] additional burdens that would be imposed on the jury"); *Taylor v. Gilbert & Bennett*, No. 95 C 7228, 1997 WL 30948, at *4 (N.D. Ill. Jan. 15, 1997) (declining to submit the issue of front pay to the jury based on the court's belief "that it is more efficient for the court to make this determination on its own, rather than allowing the presentation of arguments on the matter and the rendition of a non-binding recommendation by the jury").

There is little if any overlap between the evidence as to back pay and front pay and the questions that will otherwise be before the jury, so requesting an advisory verdict on these issues would require the introduction of additional evidence. This would increase the burden on jurors' time and the trial expenses of both parties. This additional evidence and the argument and instruction these issues would entail would also unnecessarily risk confusing the issues properly before the jury. Finally, given the number of disputes over evidence that only pertains to back pay and front pay, excluding these issues from trial will add significant efficiency and convenience. Accordingly, the Court declines to request an advisory jury verdict on any issues not triable by jury as of right in this matter.

## 2.  The Law of the Case Doctrine

Davis also argued at multiple points in his pre-trial filings that Lakeside is precluded by the law of the case doctrine from contesting certain elements of his claims or from raising certain arguments since they are not consistent with this Court's prior orders. [*E.g.*, DE 109, 111, 123]. For example, Davis argues that the employer-liability element of his hostile work environment claim has been conclusively established, apparently based on the Court's acknowledgement that Lakeside did not contest that element at summary judgment.[7] [DE 111 (moving in limine to prohibit "Any attempts by Defendant to argue against the fourth element of Plaintiff's hostile work environment claim (employer liability) as this would be improper argument and in derogation of a prior Order of this Court (D.E. 82 1/11/13) since this fact was not disputed")].

The "law of the case" doctrine is most often invoked in reference to the principle that issues determined by a higher court are binding on a lower court when remanded for further proceedings, but it also applies on a discretionary basis to rulings made by a district court within the same case. *Creek v. Village of Westhaven*, 144 F.3d 441, 445 (7th Cir. 1998) ("The 'most elementary application' of this doctrine is that when a court of appeals has reversed a final judgment and remanded the case, the district court is required to comply with the express or implied rulings of the appellate court."); *Cameo Convalescent Ctr., Inc. v. Percy*, 800 F.2d 108, 110 (7th Cir. 1986) (noting that a "district court has the discretion to make a different determination of any matters that have not been taken to judgment or determined on appeal"). In

---

[7] Davis also included the following language at least seven different times in response to Lakeside's portions of the Proposed Pretrial Order: "Plaintiff objects to contentions, law, defenses and/or argument which are not consistent with the Court's prior Opinion and Orders dated January 11, 2013 [DE#82] and March 28, 2013 and the law of the case doctrine." [DE 123]. Regardless of the soundness of this objection, its lack of specificity prevents Lakeside from meaningfully responding to, and the Court from properly resolving, such objections. The rote nature of these objections further reflects the absence of a meaningful attempt to resolve the parties' differences relative to the Proposed Pretrial Order, which the Court addresses *infra*.

either context, however, the law of the case doctrine only applies to issues that "were actually decided." *Creek*, 144 F.3d at 445; *PaineWebber Inc. v. Farnam*, 870 F.2d 1286, 1291 (7th Cir. 1989).

Here, it is not apparent to the Court that any of the issues that Davis argues constitute the law of the case were actually decided by the Court—Davis' objections appear to be based on the Court's analysis in resolving the motion for summary judgment, but not matters that the Court actually decided in doing so, particularly given that the Court denied that motion. *See Trs. of Ind. Univ. v. Aetna Cas. & Sur. Co.*, 920 F.2d 429, 435 (7th Cir. 1990) (noting that the court "could find no case . . . in which the law of the case doctrine has been applied to bind a district court to a factual statement made by the court in the course of denying a summary judgment motion, when subsequent proceedings following directly on that denial bring the factual statement into doubt," and stating that "so long as the factual issue has not been brought to judgment, the parties should be free in the course of the same proceeding to offer evidence on the issue") , *overruled on other grounds by Watson v. Amedco Steel, Inc.*, 29 F.3d 274 (7th Cir. 1994). Noting that a party did not contest an element at summary judgment is quite a different matter than actually deciding that element against that party, so the Court is doubtful that this would constitute the law of the case and bar Lakeside from contesting this issue at trial. Accordingly, should Davis raise similar objections in his subsequent filings, he should articulate each specific issue that he asserts has been decided so as to constitute the law of the case, and should support his objection with citation to authority for the assertion that the Court actually decided any such issue.

### 3.     Direct and Indirect Methods of Proof of Discrimination

The Court further notes that both parties referenced the direct and indirect methods of proof of discrimination in their pretrial filings.[8] However, the *McDonnell Douglas* framework and the distinction between the direct and indirect methods are inapplicable after the summary judgment stage. As the Seventh Circuit has noted on multiple occasions, "It is well-established in this circuit that the burden-shifting methodology should not be used during the jury's evaluation of evidence at the end of a trial on the merits." *Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1350 (7th Cir. 1995); *Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763, 767 (7th Cir. 2006) (noting that a *McDonnell Douglas* instruction was given "despite tireless repetition by appellate courts that the burden-shifting formula of that case is not intended for the guidance of jurors; it is intended for the guidance of the judge when asked to resolve a case on summary judgment"); *Gehring v. Case Corp.*, 43 F.3d 340, 343 (7th Cir. 1994) ("[Plaintiff] wanted the judge to walk the jury through the paradigm established by *McDonnell Douglas* . . . . The judge declined, for the very good reason that the Supreme Court has held that this burden-shifting model applies to pretrial proceedings, not to the jury's evaluation of evidence at trial."); *see Dadian v. Vill. of Wilmette*, 269 F.3d 831, 837 (7th Cir. 2001) ("We are baffled as to why the [plaintiff] is arguing about the application of *McDonnell Douglas* because once the case has been decided on the merits, the *McDonnell Douglas* framework drops out of the analysis."). Rather, once a discrimination case reaches trial, "the only remaining question—the *only* question the jury need answer—is whether the plaintiff is a victim of intentional discrimination." *Gehring*, 43 F.3d at 343.

---

[8] For example, Lakeside extensively argued as to the indirect burden-shifting method under the *McDonnell Douglas* framework, and even requested jury instructions setting out that framework, while Davis requested that evidence of comparators be excluded from trial on the basis that he "will only be pursuing the direct method of proving discrimination."

That is not to say that evidence that would otherwise be used in the burden-shifting method is irrelevant. The *McDonnell Douglas* framework is essentially comprised of a subset of circumstantial evidence from which a jury could infer that discrimination occurred. Those types of circumstantial evidence, such as that the employer treated similarly situated employees outside of the plaintiff's protected class differently or lied about the reasons for its actions, can be equally relevant at trial. *See Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012) (noting that circumstantial evidence of discrimination can include "suspicious timing, ambiguous statements . . . and other bits and pieces from which an inference of [discriminatory] intent might be drawn," evidence "that similarly situated employees were treated differently," and "evidence that the employer offered a pretextual reason for an adverse employment action"). However, now that this matter has reached trial, there are no "methods," whether direct or indirect, there is only evidence. The parties therefore need not concern themselves going forward with discussions of or objections based on the direct or indirect methods of proof—the ultimate questions are whether Davis was harassed, or discriminated or retaliated against, and those are the questions that will guide this Court's rulings and that will govern the issues to be tried.

D.      **Compliance with the Scheduling, Pretrial Conference, and Trial Order**

Finally, the Court expects and will demand strict compliance with the requirements and deadlines in the Court's Scheduling, Pretrial Conference, and Trial Order. Given that neither party wholly or even substantially complied with those orders, and also given the issues addressed and resolved in this order, the Court believes that the most prudent course of action is for the parties to start over. Accordingly, after holding a scheduling conference to re-set the trial date, the Court will issue a new Scheduling, Pretrial Conference, and Trial Order with revised deadlines for the parties to resubmit their filings. Those filings must comply with the Scheduling Order and take into account the issues otherwise addressed in this order. The parties' pending

motions in limine [DE 111, 116] are dismissed with leave to re-file pursuant to the new Scheduling Order. To facilitate the parties' compliance with the Scheduling Order, the Court will reiterate and emphasize certain of the parties' obligations.

First, the Proposed Final Pretrial Order must be a _joint_ filing. The parties appear to have made minimal attempts to resolve their differences relative to the Proposed Final Pretrial Order, exchanging only one or two drafts of the order at the eleventh hour without discussion between counsel. [_See_ DE 122]. If, after conferring in good faith through written correspondence and verbal discussions, the parties are unable to agree as to any of the joint portions of their resubmitted Proposed Final Pretrial Order, they may note their respective positions in their joint filing, but may submit only one.

Second, the parties are required to assemble all exhibits that may be introduced in evidence at trial, including all demonstrative or illustrative exhibits, and to make copies of each exhibit available to opposing counsel by a specified date in advance of the final pretrial conference. [DE 100 ¶ G(1)]. Any exhibit not specifically identified at that time will be excluded from trial for all purposes other than impeachment or refreshing recollection, unless the proponent of the evidence can establish that the need for the exhibit could not reasonably have been foreseen by the deadline for its disclosure. [_Id._] Illustrative of the parties violations of this requirement is Lakeside's statement at the end of its exhibit list that "The defendants [_sic_] expressly reserve the right to supplement the above Exhibits list," notwithstanding the fact that this Court's Order expressly denied it that right.[9] For the avoidance of doubt, the Court reiterates that the parties may not alter or amend their exhibit lists without leave of this Court after the

_____

[9] The Court further notes that Lakeside did, in fact, modify its exhibit list several times after its disclosure to Davis. Not only did this violate this Court's order, but it altered the lettering of the exhibits, which would have unduly complicated any attempt to resolve Davis' objections, as they referred to the exhibits' original designations.

deadline for disclosure. Similarly, the parties must specifically identify each exhibit they intend to introduce; general descriptions of categories of exhibits such as "any and all discovery exchanged between the Parties," "any and all pleadings, discovery, and other documents related to this cause," "all statements taken from any individual/entity named herein," and "any and all demonstrative exhibits" are unacceptable. Any such exhibits listed in the parties' new exhibit lists will be summarily stricken.

Similarly, the parties must specifically identify in the Proposed Pretrial Order each of the witnesses they intend to call. [DE 100 ¶ D(1)]. Identifications of witnesses such as "Any and all of Defendant's current and former employees identified during litigation and/or EEOC investigation of James Davis' Charges," "Any and all persons and/or entities identified through discovery," and "Any and all witnesses for the alleged incident(s)" do not comply with this requirement, and will likewise be stricken.

As noted in the Scheduling Order, these requirements are not meant to be burdensome or to make trial preparation more difficult, but are meant to enable the Court to conduct the final pretrial conference in an informed and productive manner, and to be fully prepared to preside over the trial of this case. The Court views these requirements as instrumental to those purposes, and will enforce them accordingly.

## E.     Conclusion

To summarize, Davis' motions for sanctions [DE 132, 133] are GRANTED in part and DENIED in part. Davis shall file a bill of costs with this Court indicating its fees and costs incurred in bringing these motions within 30 days of today's date. Lakeside may file any objection to that bill of costs within 14 days of its filing. The parties' motions in limine [DE 111, 116] are DISMISSED with leave to refile in accordance with the revised Scheduling, Pretrial Conference, and Trial Order to be issued. Further, the Court ORDERS Lakeside's counsel of

record to SHOW CAUSE why they should not be sanctioned pursuant to Rule 11(c) and Rule 26(g)(3) for the reasons specified in this order. Counsel shall respond in writing within 14 days of today's date.

SO ORDERED.

ENTERED:  March 31, 2014

_____/s/ JON E. DEGUILIO_____
Judge
United States District Court