UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JAMES DAVIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:10-CV-405 JD |
| | ) |
| LAKESIDE MOTOR COMPANY, INC., | ) |
| | ) |
| Defendant. | ) |

## **OPINION AND ORDER**

Now before the Court are the Plaintiff James Davis' Bill of Costs relative to his two motions for sanctions, and the Defendant Lakeside Motor Company, Inc.'s response to the Court's order to show cause why sanctions should not be imposed under Rule 11 and Rule 26.

**A.      Plaintiff's Bill of Costs**

Upon receiving Lakeside's trial exhibits in this matter, Mr. Davis discovered that several of the exhibits contained documents that should have been produced in discovery but were not. Accordingly, he filed two motions for sanctions against Lakeside: one for failing to produce several documents as required by Rule 37(c), and one for violating Court orders relative to third party subpoenas and for failing to produce subpoenaed documents, pursuant to Rule 37(b) and (c). The Court granted both motions in part, and in addition to excluding certain documents from trial, awarded Mr. Davis his attorneys' fees incurred in bringing these motions.[1] [DE 140]. Mr.

---

[1] Under Rule 37(c), if a court finds that a party has failed to provide information as required during discovery, it "may order payment of the reasonable expenses, including attorney's fees, *caused by the failure*." Fed. R. Civ. P. 37(c)(1)(A) (emphasis added). This language is broader than Rule 37(a), to which Lakeside cites, which permits a court to award a prevailing movant's attorneys' fees "incurred in making the motion" to compel discovery. Fed. R. Civ. P. 37(a)(5)(A). However, the only harm Mr. Davis identifies as having been caused by these failures was that he had to bring two motions for sanctions, so the Court agrees that the appropriate fees here are those incurred in bringing the motions.

Davis then filed a bill of costs in which he seeks a total of $17,762.50 for work that two of his attorneys and a paralegal performed in connection with the motions. Lakeside opposes this amount on the grounds that certain amounts of time were either excessive or unrelated to these motions, and that the hourly rates are unreasonable.

Awards of attorneys' fees are calculated using the lodestar method, which entails "multiplying the 'number of hours reasonably expended on the litigation by a reasonable hourly rate.'" *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)) (internal alterations omitted). The Court first considers Lakeside's objections to the number of hours expended by Mr. Davis' counsel. Lakeside objects to billing entries from January 17 and 20, 2014 relating to a page-by-page review Mr. Davis's counsel conducted of all of Lakeside's trial exhibits, contending that they were not incurred for the purpose of the motions for sanctions themselves. Mr. Davis responds that he could not have brought the motions for sanctions if he had not reviewed all of the exhibits to determine which ones had been produced. This review confirmed which documents Lakeside had not produced, that those documents were responsive to Mr. Davis' discovery requests, and that they should have been produced given Lakeside's discovery responses and correspondence and the Court's orders, all of which was instrumental to the motions for sanctions. Had Lakeside fulfilled its discovery obligations, this task would not have been necessary, so it is compensable. The Court agrees, though, that the one-hour conference between two attorneys and a paralegal prior to embarking on this review is excessive, so the Court awards Mr. Davis only the 12 hours billed by the paralegal for this work.

Lakeside next objects to the total amount of time spent on the basis that it is unreasonably excessive in light of the length and complexity of the briefing. Only time that was "reasonably

expended" should be compensated, meaning that a party seeking fees "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434 ("In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority."). In determining the reasonableness of the total time spent on a matter, courts consider, among other factors, the length of the filings, the complexity of the issues, and the amount of legal authority cited in the filings. *United Consumers Club, Inc. v. Prime Time Mktg. Mgmt. Inc.*, 2:07-CV-358, 2011 WL 1375160, at *1 (N.D. Ind. Apr. 12, 2011) (collecting cases).

Here, counsel billed 25 hours in preparing the two motions, and an additional 18.5 hours in preparing the two reply briefs. The Court believes that this amount of time is excessive and that sound billing judgment would have resulted in reductions in the amount of time billed. The two motions were seven and ten pages long, the latter of which included three pages of block quotations from discovery responses, and portions of the factual background and legal analysis are identical between the two motions. There is some degree of factual complexity in distilling the relevant facts from correspondence, discovery requests and responses, and previous motions and orders, but these motions were supported by only sparse citations to relevant legal authority. The reply briefs are five and nine pages long, and again focus primarily on discussions of facts rather than on legal analysis. Therefore, in approximating the amount of time that might have been reasonably billed to a client for these tasks, the Court finds that 15 hours were reasonably spent preparing the motions, and 11 hours were reasonably spent preparing the replies, on top of the time spent by the paralegal, as addressed above.

Lakeside also objects to several billing entries for time spent in meetings or performing similar tasks on the basis that they are unreasonably duplicative. The fact that multiple individuals bill time on a matter does not necessarily mean that their fees were duplicative, so long as they made unique contributions to the end product rather than duplicating each other's work. *Gautreaux v. Chicago Housing Authority,* 491 F.3d 649, 661 (7th Cir.2007); *Kurowski v. Krajewski,* 848 F.2d 767, 776 (7th Cir.1988). Here, having already determined the amount of time reasonably spent on the motions, the Court will address these concerns by allocating all of those hours to Mr. Wrage's entries, as he performed the most work on the motions. Accordingly, Mr. Davis is entitled to be compensated for 26 hours of Mr. Wrage's time, plus 12 hours of the paralegal's time.

Lakeside finally objects to the hourly rates of $350 per hour for Mr. Wrage and $125 for the paralegal. The Seventh Circuit has defined a reasonable hourly rate as one that is "derived from the market rate for the services rendered." *Pickett v. Sheridan Health Care Center,* 664 F.3d 632, 640 (7th Cir. 2011) (quoting *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003)); *Montanez v. Simon*, 13-1692, 2014 WL 2757472 (7th Cir. June 18, 2014). The Court presumes that an attorney's actual billing rate for similar litigation is appropriate to use as the market rate. *Pickett*, 644 F.3d at 640. Having recognized the difficulty of determining the hourly rate of an attorney who uses contingent fee agreements, the Seventh Circuit has advised district courts to rely on the "next best evidence" of an attorney's market rate, namely "evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases." *Pickett,* 664 F.3d at 640 (quoting *Spegon v. Catholic Bishop of Chi*., 175 F.3d 544, 555 (7th Cir. 1999)); *Montanez*, 2014 WL 2757472, at *4. Of these two alternatives, the Seventh Circuit has indicated a preference for third party

affidavits that attest to the billing rates of comparable attorneys. *Id.* (citing *Spegon*, 175 F.3d at 556).

The fee applicant bears the burden of "produc[ing] satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community." *Pickett*, 664 F.3d 632 at 640 (citing *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984)). If the fee applicant satisfies this burden, the burden shifts to the other party to offer evidence that sets forth "a good reason why a lower rate is essential." *Id.* (citations omitted). However, if the fee applicant does not satisfy its burden, the district court has the authority to make its own determination of a reasonable rate. *Id.* (citing *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 409 (7th Cir. 1999)).

As to Mr. Wrage's rate, the affidavit from Mr. Barkes, one of Mr. Davis' attorneys, states that Mr. Wrage's "standard hourly billing rate" is $350 per hour. This stops short of stating that Mr. Wrage actually bills this amount to Mr. Davis or to other clients in similar matters, though. In a previous fee submission in this matter, Mr. Wrage stated that his hourly rate in 2012 was $300, and Lakeside did not object to that amount. [DE 64, 76]. In support of that previous fee submission, Mr. Wrage also submitted an affidavit from Mark L. Phillips of Newby Lewis Kaminski & Jones, LLP, in which Mr. Phillips states that he is familiar with Mr. Wrage's work, experience, and reputation, as well as the fees charged by similar attorneys in employment discrimination matters, and that the reasonable hourly rate for such attorneys ranges from $300 to $375 per hours. In response to the current submission, Lakeside did not provide any counter affidavits (until it attached an affidavit from a different case to its reply brief, which is too late), and cited two inapposite cases, one awarding $150 per hour in a § 1983 action, and one awarding up to $250 per hour in a copyright case for work performed in 2006. *D.S. v. E. Porter Cnty. Sch.*

*Corp.*, 981 F. Supp. 2d 805, 807 (N.D. Ind. 2013); *Eagle Servs. Corp. v. H2O Indus. Servs., Inc.*, 2:02-CV-36, 2012 WL 3255606 (N.D. Ind. Aug. 8, 2012).

Of this, the most direct evidence of Mr. Wrage's reasonable hourly rate is the $300 per hour rate he received in this matter just over a year ago. But Mr. Wrage is now seeking $350 per hour, and he has not offered any explanation for the increase in his hourly rate of over fifteen percent in one year. While Mr. Phillips' affidavit provides some support for a higher rate, it only represents Mr. Phillips' opinion as to a reasonable rate, and does not indicate that any other attorneys actually bill up to $375 per hour in similar matters. *See Montanez*, 2014 WL 2757472, at *5 ("We've held that conclusory affidavits from attorneys 'merely opining' on the reasonableness of another attorney's fee—unlike affidavits describing what 'comparable attorneys charge for similar services'—have little probative value."). The Court therefore finds that a more limited increase in Mr. Wrage's prior hourly rate is justified, and awards Mr. Wrage an hourly rate of $315 per hour.

As to the paralegal's rate, Mr. Barkes' affidavit similarly states that the "current standard hourly billing rate for [the firm's] employment law paralegal is $125 per hour." Though Lakeside raised a conclusory objection that this amount was excessive, none of its evidence or arguments addressed the reasonable rate for a paralegal. The Court finds that $125 per hour is reasonable in this context, and awards Mr. Davis $125 per hour for the paralegal's time.

Therefore, multiplying Mr. Wrage's 26 hours reasonably expended by his reasonable hourly rate of $315, plus the paralegal's 12 hours multiplied by $125 per hour, the Court awards Mr. Davis $9,690 in attorneys' fees for the motions for sanctions. The Defendant's motion to vacate the clerk's notice of costs to be taxed as premature [DE 151] is DENIED as moot.

## B. Show Cause Order for Rule 11 and Rule 26 Sanctions

The Court next addresses the show cause order. In the previous order, the Court found that Lakeside failed to comply with its obligations under Rule 26(e) to supplement its discovery responses, so pursuant to Rule 37(c), the Court barred Lakeside's use of several documents at trial and awarded Mr. Davis his attorneys' fees for the motions. In ruling on those motions, the Court also noted that certain of Lakeside's factual assertions, both in its discovery responses and in its briefing on the motions for sanctions, had no evidentiary support and were contradicted by the record. Court therefore ordered Lakeside to show cause why it should not be sanctioned under Rule 11(c) and Rule 26(g)(3) for falsely certifying that the factual contentions in its briefs had evidentiary support, in violation of Rule 11(b)(3), and that its discovery responses were "complete and correct" at the time they were made, in violation of Rule 26(g)(1)(A). [DE 140]. Lakeside responded as ordered on April 14, 2014, [DE 142], and Mr. Davis submitted a response on April 28, 2014. [DE 146].

As background, Mr. Davis requested during discovery that Lakeside produce the personnel file of Mike Nichols (Mr. Davis's former supervisor and the individual who allegedly harassed and discriminated against him), including his performance reviews, and all documents that Lakeside produced to or received from the EEOC relative to his charge of discrimination. [DE 133-1]. Lakeside declined to produce any such documents, stating: "These documents were provided to the EEOC in the course of its investigation. The plaintiff has indicated that he already requested said information from the EEOC and is in possession of the same." [*Id.*]. This was only partly true, as Mr. Davis had already requested a copy of the EEOC's case file but had not yet received it. Lakeside had already received its copy of the EEOC file by that time, but never produced a copy of the file to Mr. Davis. Mr. Davis finally received the file from the EEOC several months later, at which time he sent a copy to Lakeside.

When Lakeside disclosed its trial exhibits to Mr. Davis, those exhibits contained a number of documents that were responsive to Mr. Davis's discovery requests but that Lakeside had never produced. Among them was a 2006 performance review of Mr. Nichols. Mr. Davis moved to exclude that document from trial under Rule 37(c), and Lakeside responded by repeating its unequivocal assertion that "the employment evaluation was produced to the EEOC by the defendant during the EEOC's investigation" and that Mr. Davis received the document during discovery in the EEOC file. [DE 134 p. 4; *see also* p. 9 (stating that Lakeside "believed and continues to believe that opposing counsel had the EEOC file and Evaluation Form, which was contained within the EEOC file")]. Based on the complete lack of evidentiary support for this fact, the Court ordered Lakeside to provide evidentiary support for this assertion and to detail the nature and extent of the inquiries upon which it had based this assertion.

In response, Lakeside has provided no documentary or other direct evidence that it ever produced this document to the EEOC, as it has repeatedly claimed. It has not provided any correspondence by which Mr. Ninkovich purportedly sent the document or any correspondence in which the EEOC requested the document, and it did not verify the documents in the EEOC's possession with a subsequent FOIA request, for example. However, it has submitted affidavits from two of its attorneys, Court Farrell and Jennifer Davis, and from the Lakeside employee in charge of the matter, Mike Ninkovich. Mr. Farrell consulted with Mr. Ninkovich when compiling Lakeside's discovery responses in 2011 and asked Mr. Ninkovich for Mr. Nichols' personnel file, among other documents. Mr. Ninkovich recalls advising Mr. Farrell that any such documents had been submitted to the EEOC, but he has no present recollection of having sent the document or any documentation of having done so. Mr. Ninkovich does not indicate the basis for his belief at the time that the document had been sent to the EEOC. Mr. Farrell represents that

when he served Lakeside's discovery responses in June 2011, he relied on Mr. Ninkovich's statement that the document had been produced.

Mr. Farrell and Ms. Davis also state that the performance evaluation at issue is currently located in a paper file at the firm that they believe to contain the investigation file they received from the EEOC. Mr. Farrell has no present recollection of whether this document was in the file when he received it from the EEOC, but he does not recall having received it from Mr. Ninkovich directly or from any other source either. Ms. Davis represents that while preparing for trial in January 2014, she reviewed the file and listed the employment evaluation on Lakeside's exhibit list in case it became necessary to rehabilitate Mr. Nichols after questioning by Plaintiff's counsel. She states that she was unaware that the document had not been produced to Mr. Davis, and that she believed Mr. Davis had received the document when he received his copy of the file from the EEOC.

Based on these representations, the Court is satisfied that Lakeside's counsel**'s** certification of the initial discovery response complied with Rule 26(g) at the time the certification was made in 2011. Under Rule 26(g), every discovery response must be signed by an attorney, certifying that "to the best of the person's knowledge, information, and belief formed after a reasonable inquiry," the response is consistent with the Rules of Civil Procedure. Here, defense counsel relied on Mr. Ninkovich's representation that the document had been sent to the EEOC in so stating in Lakeside's discovery response on June 13, 2011. It appears that Mr. Ninkovich was mistaken, but Mr. Farrell had reason to trust him since, as the person who interacted with the EEOC for Lakeside, Mr. Ninkovich should have had firsthand knowledge of this fact. Perhaps Mr. Farrell should have inquired further, particularly since none of the correspondence between Lakeside and the EEOC investigator contained any request for or

reference to Mr. Nichols' personnel file or performance evaluations. But, counsel had no other reason to disbelieve his client at that time, so the Court finds that his inquiry was reasonable under Rule 26(g). *Henderson v. Jupiter Aluminum Corp.*, No. , 2006 WL 361063, at *7 (N.D. Ind. Feb. 15, 2006) (holding that sanctions were not warranted where the attorney reasonably relied on his client's factual representations); Fed. R. Civ. P. 26 advisory committee notes (1983) ("In making the inquiry, the attorney may rely on assertions by the client . . . as long as that reliance is appropriate under the circumstances.").

Before considering whether the defendant complied with Rule 11 when later reiterating those assertions in its submissions to the Court, the Court must first consider the applicability of that rule. Though neither party raised the issue, subsection (d) to Rule 11 states, "This rule does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37." Fed. R. Civ. P. 11(d). The Advisory Committee Notes to the 1993 Amendments, which added this subsection, state:

> Rules 26(g) and 37 establish certification standards and sanctions that apply to discovery disclosures, requests, responses, objections, and motions. It is appropriate that Rules 26 through 37, which are specially designed for the discovery process, govern such documents and conduct rather than the more general provisions of Rule 11. Subdivision (d) has been added to accomplish this result.

Fed. R. Civ. P. 11 advisory committee note. The filing that prompted this Court's order was Lakeside's response to Mr. Davis' Rule 37 motion, so under a strict application of this subsection, Rule 11 does not apply. In addition, there is no direct analogue to Rule 11 in Rules 26 or 37 in these circumstances where the objectionable conduct is separate from the party's underlying discovery violation and its justification in opposing the motion.

Nonetheless, "[a] district court has the inherent power 'to fashion an appropriate sanction for conduct which abuses the judicial process.'" *Salmeron v. Enter. Recovery Sys., Inc.*, 579 F.3d

10

787, 793 (7th Cir. 2009) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991)). Sanctions may be appropriate under a court's inherent authority where a party "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," *Chambers*, 501 U.S. at 45–46, and bad faith in this context encompasses both reckless and intentional conduct, *Mach v. Will Cnty. Sheriff*, 580 F.3d 495, 501 (7th Cir. 2009); *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 799 (7th Cir. 2013) *cert. denied,* 134 S. Ct. 1026 (2014) ("There is no single litmus test for determining what constitutes bad faith, though more than mere negligence is required."). Therefore, the Court proceeds under its inherent power, with reference to Rule 11 for the appropriate standard of care in these circumstances.

In applying that standard here, the Court finds that while Lakeside may have initially been justified in relying on its client's representation, that was no longer the case when it responded in opposition to Mr. Davis' motion for sanctions on February 26, 2014, several years later. In fact, contrary to Lakeside's assertion that it had no reason to believe it had not sent the document to the EEOC or that Mr. Davis had not received it, it had many reasons by that time. First, in a July 5, 2011 letter responding to Lakeside's discovery responses, Mr. Davis specifically pointed out that the documents Lakeside produced contained no indication that it had sent the personnel records to the EEOC:

> Contained within the Plaintiff's personnel file produced by [Lakeside] are document requests it received from EEOC federal investigator, Carol Rawlins, which seeks [*sic*] the following: an employee list, information for Jennifer Blackburn and Charles Stevens, a copy of your attendance and absenteeism policy in effect since Sept. 1, 2008, and names of other employees under Mike Nichols who violated the attendance policy. (Ex. B, pp. 1, 2) From those documents you can see that Harbor's claim that the EEOC requested and received personnel files is simply incorrect.

[DE 147-7 p. 8].

11

In addition, when Mr. Davis' counsel finally received a copy of the investigation file from the EEOC, he sent a copy of the file to Lakeside, at which point Lakeside knew precisely which documents Mr. Davis possessed. Lakeside discounts this fact, stating, "Although a review of the plaintiff's EEOC file, when finally received by defense counsel, could have revealed that the same did not include the subject document, there is no requirement that defense counsel was obligated to undertake such a duty . . . ." [DE 142 p. 12]. The Court does not agree. Lakeside imposed that obligation on itself by refusing to provide the documents directly to Mr. Davis and stating instead that he would receive them from the EEOC. Having chosen to proceed in this circuitous and cavalier fashion, Lakeside cannot then bury its head in the sand when Mr. Davis follows up to confirm exactly which documents he received from the EEOC.

Finally, Mr. Davis filed a motion for sanctions relative to Lakeside's failure to produce the document. Even if defense counsel had inadvertently missed the above indications, this placed Lakeside squarely on notice that its facts were mistaken and that Mr. Davis never received the document. Lakeside had ample reason at this point to doubt whether it had sent the document to the EEOC and whether Mr. Davis had received it—Lakeside has no documentation of having sent the document to or received the document from the EEOC, the communications in the EEOC file contain no request for or reference to the document, and Mr. Davis identified this discrepancy to Lakeside, provided Lakeside with his own copy of the file, and finally moved for sanctions. Yet, Lakeside apparently conducted no further inquiry before repeating its unqualified assertion that the document had been provided to the EEOC and that Mr. Davis had received it. The Court finds that this does not constitute "an inquiry reasonable under the circumstances," as would be required by Rule 11(b)(3), and that this reckless conduct justifies the imposition of sanctions under the Court's inherent authority.

In considering the appropriate recourse, the Court is guided by the principle that "[i]n the normal course of events, justice is dispensed by the hearing of cases on their merits." *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 759 (7th Cir. 2004). The Court also notes that it has already granted Mr. Davis' motion to exclude the document from trial and awarded him his reasonable attorneys' fees for that motion.[2] The Court also recognizes, however, that this is not the first instance in which the defendant has failed to exercise the appropriate degree of diligence in this matter. Lakeside failed to disclose its receipt of several sets of subpoenaed documents and failed to produce them to Mr. Davis, it failed to disclose several workplace policies it later sought to use in its own behalf, and as discussed, it failed to produce Mr. Nichols' performance review and failed to conduct reasonable investigation into the facts it invoked in defense of its failure to produce that document. All of this conduct came to light only through Lakeside's disclosure of the documents it intended to use at trial—likely meaning those most favorable to it. The Court can only wonder whether other documents that are not so favorable to Lakeside remain undisclosed.

Resolving this case on the merits demands that Mr. Davis have access to all the discoverable documents he has requested in order to fully present his case. Accordingly, the Court ORDERS Lakeside to conduct a *de novo* review of its document production to ensure that it has fully produced all documents responsive to Mr. Davis' requests. Lakeside's counsel must review their own files and review the document requests with their client (after sufficiently imparting to it the need to be thorough and complete) to verify that it has provided them with all responsive documents. To the extent Lakeside previously objected to any document requests and declined to produce documents on that basis, it must review those objections and any subsequent

---

[2] Mr. Davis does not specify what further relief he seeks, but asks this Court to impose whatever sanctions it deems appropriate.

correspondence with Mr. Davis relative to those objections to ensure that the factual bases for those objections remain accurate. Lakeside must complete these tasks, provide Mr. Davis with any supplemental production and responses, and file a certification of compliance within 45 days of today's date. The Court views this remedy as most appropriate under the circumstances and most geared towards resolving this case on its merits, and the Court does not believe that any more severe sanctions are warranted at this time.

**C.     Conclusion**

The Court ORDERS the defendant to pay Mr. Davis $9,690 in attorneys' fees relative to the motions for sanctions. Further, as to the Court's show cause order, the Court ORDERS Lakeside to conduct a *de novo* review of its document production, as described herein, to ensure that it has fully produced all documents responsive to Mr. Davis' requests. Lakeside must certify its compliance with this order within 45 days of today's date. The Defendant's motion to vacate the clerk's notice of costs to be taxed [DE 151] is DENIED as moot.

SO ORDERED.

ENTERED: July 7, 2014

/s/ JON E. DEGUILIO
Judge
United States District Court

14